UNITED STATES COUR OF APPEALS
FOR THE TENTH CIRCUIT

VICTORIA CARBAJAL,

DEAN CARBAJAL,

         Plaintiffs-Appellants

v.

MYRL SERRA,
SHERRI PRICE,
CAROL WARNER,
DAVID ROMERO,
JOE QUINTANA,
FRED MCKEE,
BENJAMIN SCHROEDER,
BILL RAILEY,
CHRIS WELDON,
BOARD OF COUNTY COMMISSIONERS OF DELTA,
GILBERTO LUCIO,
JAMES DIXON,
ADAM BARRETT,
JOEL SMITH,
JESSE REMBERT,
CITY and COUNTY OF DENVER,
DARIN DESEL,
UNKNOWN CORRECTIONAL OFFICER1, and
UNKNOWN CORRECTIONAL OFFICER2.
         Defendant-Appellees

Case No. 17-1301
(D.C. Colo. No. 1: 10-CV-2862-PAB-KLM)

APPELLANTS OPENING BRIEF

Appeal From The United States District Court For The District of Colorado

Honorable Phillip A. Brimmer

Civil Action No. 12-CV-3231-PAB-KLM

Oral Argument is Requested

Victoria Carbajal, pro se.
609 Barbara Ct. Apt C.
Montrose, Co. 81401

Dean Carbajal, pro se.
PO Box 777
Canon City, Co. 81401

Statement Regarding Oral Argument

Plaintiffs Mr. Corbajal and Ms. Carbajal respectfully move the Court for leave to present oral argument pursuant to Fed.R.App. 34(a); 10th Cir. R. 34.1.9.1, and assert that oral argument would materially assist in the determination of this appeal. As such, this case should therefore be submitted for oral argument.

## CERTIFICATE OF COMPLIANCE

1.    The Appellant's Joint Brief is in compliance with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief does not exceed the 30 pages, excluding the parts of the brief exempted by Fed. R. App. P. 32.(f).

2.    This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5) and the type style requirements of Fed.R.App.P. 32(a)(6), because this brief has been prepared in a proportionally spaced typeface or handwritten.

Dean Carbajal

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT _____ i

TABLE OF AUTHORITIES _____

LIST OF ATTACHMENTS _____

JURISDICTIONAL STATEMENTS _____ 1

QUESTION PRESENTED _____ 1

STATEMENT OF THE CASE _____ 2

    A. Nature Of Case _____ 2

    B. COURSE OF PROCEEDINGS _____ 2

        1. Motions to dismiss the Complaint at the pleading stage ___ 3

        2. Summary Judgment Proceedings _____ 5

        3. Plaintiff's Rule 59 and 60 Motion based on intrinsic and extrinsic fraud _____ 7

    C. FACTS RELEVANT TO ISSUES ON APPEAL _____ 7

        1. The Prosecution, Probation, and Delta Defendants conspired to maliciously prosecute Mr. Corbajal and in furtherance of this conspiracy wrongfully revoked an illegal and false deferred sentence based on false affidavits and destroyed evidence, and wrongfully arrested and prosecuted him _____ 7

            a. The Defendants destroyed exculpatory evidence and manu-factured probable cause to wrongfully arrest, prosecute, and confine Mr. Carbajal. _____ 8

            b. Delta Sheriff's Defendants coerced Mr. Carbajal into accepting an illegal deferred and into complying with this illegal deferred's pro-bation _____

            c. Lucio and Quintana conspired with others to force the revocation of Mr. Carbajal's illegal deferred judgment sentence. _____ 10

            d. The Colorado Supreme Court condemned the Defendants illegal arrest and prosecution of Mr. Carbajal, and dismissed this illegal deferred. _____ 11

        2. The Denver Defendants Conspired with each other to silence Mr. Corbajal and derail his civil actions for malicious prosecution _____ 11

            a. Illegal home invasion on April 29, 2009 at 28th & California, Denver _____ 11

            b. Home Invasion on October 13, 2009 at 71st and Zenobia, Westminster 12.

            c. Home Invasion on April 5, 2010 at 23rd Arapahoe, Denver

        3. Victoria Carbajal protested the illegal prosecution and conspiratory acts of Quinhan, Lucio, Watts, and others, and was threatened and attacked in direct response to her protests and complaint in exercise of her civil rights 13

iii

SUMMARY OF ARGUMENT ................................................ 13

ARGUMENT ........................................................... 14

I.   The Trial Court Erred In Dismissing Plaintiffs Complaint, Because The
     Pleadings Alleged Facts From Which A Jury May Reasonably Infer That
     Defendant Violated Plaintiffs Constitutional Rights Under The Rubric
     Of The First, Fourth, and Fourteenth Amendment. ............... 14

     A.   Standard of Review and Preservation ..................... 14

     B.   Mr. Carbajal Stated a Fourth and Fourteenth Amendment Malicious
          Prosecution Claim Against The Prosecution and County Defendants ... 15

          1.  Mr. Carbajal stated a Fourth and Fourteenth Amendment malicious
              prosecution claim against the Prosecution Defendants ....... 15

              a. Prosecutorial immunity was misapplied ................. 17

     C.   Ms. Carbajal Stated a First Amendment Retaliation Claim ....... 18

          1.  Ms. Carbajal has standing to bring a First Amendment claim .... 18

     D.   Mr. Carbajal Stated a Viable Municipal Liability Claim Against Delta
          County Based On Its Unconstitutional Policies. ............. 19

          1.  Defendant Delta County is Amenable For Its Unconstitutional
              Policies Set Off By Its Policy Makers. ................... 20

     E.   The Trial Courts Denial Of Leave To Amend And Page Limitations
          On The Complaint Was An Abuse of Discretion And Error Of Law.. 21

II.  The Trial Court Erred As A Matter Of Law In Granting Summary Judgment
     Where The Evidence Before The Court Controverted Defendants Motion For
     Summary Judgment, Establishing A Genuine Issue Of Material Fact. ... 22

     A.   Standard of Review and Preservation ..................... 22

     B.   A Reasonable Jury Could Have Returned A Verdict Against The
          Defendants For Malicious Prosecution Under The 4th and 14th Amendment ... 23

          1.  Mr. Carbajal was maliciously prosecuted by the Delta and
              probation Defendants in case no. 99CR896 ................. 25

     C.   The Trial Courts Denial Of Leave To Reopen Discovery, Denial
          Of Stay Of Proceedings, and Denial of Extension of Time Was Unfair ... 26

III. The Trial Court Erred In Denying Mr Carbajals Rule 59 and Rule 60
     Motions Based On Intrinsic And Extrinsic Fraud, Because The Extent
     Judgment Was The Product Of Defendants Fraud Upon The Court ....... 27

     A.   Rule 59 and 60 Jurisprudence. ........................... 28

     B.   Mr. Carbajal established a legal right to relief from the underlying
          judgment based on Defendants Fraud and the Courts Clear error ... 28

CONCLUSION ......................................................... 30

# TABLE OF AUTHORITIES

Cases:

Ashcroft v. Iqbal, 556 U.S. 606, 129 S.Ct. 1937 (2009) — 22

Albright v. Oliver, 510 U.S. 266 (1994) — 17

Alexander v. Oklahoma, 382 F.3d 1206 (10th Cir. 2004) — 16

Anthony v. Baker, 767 F.2d at 662 (10th Cir. 2006) — 17

Archuleta v. Wagner, 523 F.3d 1278 (10th Cir. 2008) — 16

Atkins v. Lanning, 555 F.2d 485 (10th Cir. 1997) — 13

Beacom v. Bd. of County Comm'r, 657 P.2d 440 (Colo. 1983) — 25

Bell Atlantic Corp. v. Twombly, 550 U.S. 554 (2007) — 21

Blake v. Dickason, 997 F.2d 749 (10th Cir. 1993) — 18

Blount v. Johnson, 373 F.Supp. 615 (w.D.V. 2005) — 28

Bond v. Draper, 759 F.3d 573 (8th Cir. 2009) — 27

Brown v. Parker-Hannifin Corp., 746 F.2d 1407 (10th Cir. 1984) — 27

Brunner v. Baker, 506 F.3d 1021 (10th Cir. 2005) — 21

Buckley v. Fitzsimmons, 509 U.S. 259 (1993) — 12

Carter v. City of Philadelphia, 181 F.3d 339 (3rd Cir. 1999) — 24

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) — 26

Conner v. Reinhard, 847 F.2d 384 (7th Cir. 1988) — 21

Davidson v. Sandstrom, 83 P.3d 648 (Colo. 2004) — 23

Dewell v. Lawson, 489 F.2d 877 (10th Cir. 1974) — 11

Doe v. City of Albuquerque, 667 F.3d 1111 (10th Cir. 2012) — 11

Edelman v. Jordan, 415 U.S. 651 (1974) — 24

Elam Construction v. Reg'l Transp. Dist., 129 F.3d 1343 (10th Cir. 1997) — 26

Estate of Booker v. Gomez, 2014 WL 92 915 (10th Cir. March 11, 2014) — 21

Fowler v. Land Management Groupe, Inc., 978 F.2d 158 (4th Cir. 1992) — 28

Galbrith v. County of Santa Clara, 307 F.3d 1119 (9th Cir. 2002) — 23

Garrall v. L.E. Fleming, 362 F.3d 692 (10th Cir. 2004) — 20

Gee v. Pacheco, 627 F.3d 1178 (10th Cir. 2010) — 22

Goldstein v. City of Long Beach, 715 F.3d 750 (9th Cir. 2013) — 24

Gradle v. Oklahoma, 203 F.Appx 179 (10th Cir. 2006) — 25

Graves v. Thomas, 450 F.3d 1215 (10th Cir. 2005) — 23

Gregory v. City of Louisville, 444 F.3d 725 (6th Cir. 2006) — 17

Guzman-Rivera v. Rivera-Cruz, 55 F.3d 26 (1st Cir. 1995) — 15

Hunt v. Bennett, 17 F.3d 1263 (10th Cir. 1994) _____ 18

Hunter v. Coughlin, 79 F.3d 285 (2nd Cir. 1996) _____ 29

Imbler v. Pachtman, 424 U.S. 409 (1976) _____ 12

Johnson v. Dossen, 515 F.3d 778 (7th Cir. 2008) _____ 16

Johnson v. Quinn, 1999 WL 116222 (N.D. Ill. Feb. 26, 1999) _____ 27

Jones v. Bock, 549 U.S. 199 (2007) _____ 28

Jordan v. Jackson, 15 F.3d 333 (4th Cir. 1994) _____ 23

Kalina v. Fletcher, 522 U.S. 118 (1997) _____ 13

Katz v. Goodyear Tires & Rubber Co., 737 F.2d 238 (2nd Cir. 1984) _____ 28

Larson v. Agos, No. 11-CV-986-CMA-CBS, 2011 U.S. Dist. LEXIS 66864 (D.Colo. 2011), aff'd,
    449 Fed. Appx. 728 (10th Cir. 2011) _____ 17

Maraglia v. Maloney, 499 F.Supp. 2d 93 (D. Mass 2007) _____ 28

Martinez v. Winner, 771 F.2d 424 (10th Cir. 1985) _____ 16

Milligan v. Archuleta, 659 F.3d 1294 (10th Cir. 2011) _____ 22

Miller v. Pate, 386 U.S. 1 (1967) _____ 16

Mink v. Suthers, 482 F.3d 1244 (10th Cir. 2007) _____ 13

Mobley v. McCormick, 40 F.3d 337 (10th Cir. 1994) _____ 12

Monell v. Dept. of Soc. Serv. of City of New York, 436 U.S. 658 (1978) _____ 22, 24

Monroe v. Pape, 365 U.S. 167, 187 (1961) _____ 19

Myers v. Koopman, 462 Fed. Appx. 823 (10th Cir. 2012) _____ 12

Northern Ins. Co. of New York v. Chatham County, Georgia, 547 U.S. 189 (2006) _____ 24

Oxendine v. Kaplan, 241 F.3d 1272 (10th Cir. 2001) _____ 22

Palladium Music Inc. v. EatSleepmusic, Inc., 398 F.3d 1193 (10th Cir. 2005) _____ 26

Pembaur v. City of Cincinnati, 475 U.S. 469 (1986) _____ 24

Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004) _____ 17

Porter v. Nussle, 534 U.S. 516 (2001) _____ 27

Porro v. Barnes, 624 F.3d 1322 (10th Cir. 2010) _____ 21

Regents of the Univ. of Cal. v. Doe, 519 U.S. 425 (1997) _____ 24

Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174 (10th Cir. 2007) _____ 18

Rowe v. City of Fort Lauderdale, 279 F.3d 1271 (11th Cir. 2002) _____ 16

Rozek v. Topolnicki, 865 F.2d 1154 (10th Cir. 1989) _____ 25

Ruffin v. Fuller, 125 F.Supp. 2d 105 (S.D.N.Y. 2000) _____ 30

Sanchez v. City of Chicago, 700 F.3d 919 (7th Cir. 2012) _____ 29

Saucier v. Katz, 533 U.S. 194 (2001) _____ 16

Shero v. City of Grove, 510 F.3d 1196 (10th Cir. 2007) _____ 12

Spurlock v. Thompson, 330 F.3d 791 (6th Cir. 2003) _____ 12

Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250 (10th Cir. 2007) _____ 23

Sturdevent v. Paulsen, 218 F.3d 1160 (10th Cir. 2000) _____ 24

Tal v. Hogan, 453 F.3d 1244 (10th Cir. 2006) _____ 18

Tiberio v. Ciano Corp., 89 F.3d 1423 (10th Cir. 1996) _____ 20

Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504 (10th Cir. 1998) _____ 21

U.S. v. Davis, 183 F.3d 231 (3rd Cir. 1999) _____ 29

Wilkens v. DeReyes, 528 F.3d 790 (10th Cir. 2008) _____ 12

Yarris County of Delaware, 465 F.3d 129 (3rd Cir. 2006) _____ 16

Ysura v. Pocatello Educ. Ass'n, 129 S.Ct. 1093 (2009) _____ 24

Constitutional Provisions, Statutes, and Rules:

U.S. Const. Amend. IV _____ passim

U.S. Const. Amend. XIV _____ passim

Colo. Const. Art. VI _____ 25, 26

CRS § 13-80-102 _____ 18

CRS § 20-1-303 _____ 25

CRS § 30-11-107 _____ 24

CRS § 30-26-805 _____ 26

Jurisdictional Statement

The Trial Court has subject matter jurisdiction under 42 USC § 1331 (a) based on questions of constitutional nature. Appellate jurisdiction under 28 U.S.C. § 1291 is invoked to review the final judgment entered July 21, 2017 [ECF # 261]. A motion for New Trial was filed on August 17, 2019. [ECF # 267].

Question Presented

I.     Whether the Trial Court erred as a matter of law in granting summary judgment because evidence adduced by Mr. Carbajal **established** a controverted issue of material fact, as to:

1. whether the Defendant maliciously prosecuted Mr. Carbajal under the rubric of the Fourth and Fourteenth Amendment;

2. whether the Defendants deprived Mr. Carbajal of his Fourth Amendment right to be free from an illegal search and seizure; and

3. whether Defendants conspired to violate Mr. Carbajal's Fourth and Fourteenth Amendment rights.

II.     Whether the Trial Court erred as a matter of law in dismissing Plaintiff's claims at the pleading stage, where the Complaint established a plausible entitlement to relief under theories: retaliation, denial of due process, and malicious prosecution.

III.     Did the Trial Court err as a matter of law in dismissing Plaintiff's claims against Prosecution Defendants for acts outside the prosecutorial function, namely their acts as a complaining witness and co-conspirator, which are non-advocacy conduct?

IV.     Was the Trial Court's reliance on qualified immunity as a basis for dismissal correct, despite a showing of constitutional violations that were clearly established?

V.     Whether Defendants' failure to properly name Denver Defendants as ordered by the Court, to joinder necessary parties, and designate non-parties at fault, as well as deceptive discovery responses, that resulted in the improper naming of Defendant Anthony Schlick as Adam Barrett and improper dismissal of those Defendants, violated Due Process.

VI.     Does the trial Court's denial of a stay of Summary Judgment and refusal to open discovery, as well as denial of extension of time amount to an abuse of discretion, because the Defendants fraudulently concealed evidence and lied about their involvement and knowledge of interested parties involved here?

VII.     Whether the trial Court erred as a matter of law in denying Plaintiff's Rule 59 and 60 motions based on intrinsic and extrinsic fraud, because the

1

defense compelled the wrongful dismissal of Plaintiffs claims at summary judgment based on their joint concealment of the Denver and State Defendants liability.

VIII.    Whether the trial Court's imposition of a 25 page limit on the Complaint violated Mr. Carbajal's right to redress grievance and due process, because this oppressive page limit prevented him from adequately pleading his claims.

## STATEMENT OF CASE

A.    Nature Of Case

Plaintiffs Mr. Dean Carbajal and Ms. Victoria Carbajal filed a §1983 action to redress State Officials violation of their civil rights, and who conspired to violate their civil rights by repeatedly systematically depriving them of their, liberty, peace, and security. The First category of Defendants, called the State Defendants, include Probation Officers Carol Warner, David Romero, and Joe Quintana; and Correctional Officers Unknown 001 and Unknown 002. The Second Category, called the Delta Defendants, include Thurl Serna, Sherri Price, Fred McKee, Benjamin Schroeder, Chris Weldon, Bill Ratley, Delta County. The third category, called Denver Defendants, include City and County of Denver, Gilbert Lucio, James Dixon, Adam Barrett, Joel Smith, Jesse Rembert, Jon Lopez, Michael O'Niell, Doris Davel, and Perry Speelman. The third category, called Second Judicial District Defendants include Jeff Watts.

The pleadings present six relevant claims under 42 U.S.C. §1983, each with multiple subcounts: (1) malicious prosecution – 4th and 14th Amendment violation; (2) unreasonable search and seizure – 4th and 14th Amendment violation (3) excessive force – 4th and 14th Amendment violation; (4) conspiracy to violate civil rights – 4th and 14th Amendment violation; (5) harassment and retaliation – 1st and 14th Amendment violation; and (6) Monell claim – 4th and 14th Amendment violation. Plaintiff's sought both compensatory and injunctive relief.

Plaintiffs appeal the Courts dismissal of their claims against the Delta and State Defendants at the pleading stage, and the subsequent dismissal of the remaining claims at the summary judgment phase, save Plaintiffs excessive force claims against Watts and Denver Defendants, which proceeded to trial. Plaintiffs unfair trial is assigned as err. as well. Finally, Ms. Carbajal appeals the improper dismissal of her claims against Watts at the pleading stage.

B.    Course of Proceedings and Disposition Below.

The Plaintiffs Ms. Carbajal and Mr. Carbajal filed a complaint on November

2

23, 2010. (ECF #1), and amended the complaint on February 10, 2011. (ECF #27)
A second Amended Complaint was filed on April 4, 2011 (ECF #118, 119).

   1.    Motions to dismiss the Complaint at the pleading stage
      Motions to dismiss the second Amended Complaint were filed by
each of the respective groups of defendants (ECF #128, 135, 137, 141, & 142)
and were negated by the Plaintiffs (ECF #155, 172, 173, 174, 182, & 188).

      A Recommendation was entered granting in part, and denying in part, (ECF #178,
Order, pp. 1-42). Defendants' Motion to Dismiss. Plaintiff Wehma Carbajal's claims
were dismissed for want of standing and absence of a civil rights violation, (ECF
#178, Order, p. 31), which overlooks that Ms. Carbajal 1st and 14th Amendment rights
were violated when Wolff and Delta Defendants directly harassed and retaliated against
her due to her protests of their illegal conduct. (ECF #21, objection, pp. 6-10).

      Secondly, it was recommended that the Prosecution Defendants be dismissed
based on absolute immunity for their destruction of exculpatory evidence and false
affidavits supporting Mr. Carbajal's arrest. (ECF #178, Order, pp. 18-20); which, over-
looks that Serra, Price, and Friends conspiracy to wrongfully arrest Mr. Carbajal
prior to the institution of legal process — illegal revocation of hypothetical deferred
sentence that had been fabricated, and that in furtherance of this conspiracy
the Prosecution Defendants destroyed exculpatory evidence and filed false
affidavits for Mr. Carbajal's arrest ex parte — acting as a complaining witness,
conduct that does not qualify for immunity. (ECF #21, objection, p. 4).

      In addition, it was recommended that a Third amended complaint be filed,
but the Court imposed a 25 page limitation, including any attachments. This unfair
page limitation deprived Mr. Carbajal of his right to plead additional claims and
detail facts supporting these claims. (ECF #178, Order, p. 42). Mr. Carbajal objected
and requested leave to submit a 30 page complaint due to this oppressive page limit
(ECF #234, objection, pp. 3-4).

      The District Court entered an order adopting in part and rejecting in part the
recommendation, finding the Prosecution Defendants not immune for their destruction
of exculpatory evidence, but extending immunity to the filing of false affidavits
ex parte, (ECF #229, Order, p. 4). However, the Court rejected State Defendants' plea
for witness immunity, finding that "decisions involving the revocation of probation...
by a probation ... officer warrant only qualified, not absolute immunity." (ECF #229, p. 5)

      On June 23, 2011 the Court conducted a status conference directing defense
Counsel Patrick Singer and Robert Huss to file a Joint Notice of Proper Spelling of

3

Defendants names. (ECF #181, p.2). However, the Defendants concealed names
of numerous defendants.

A third amended Complaint was filed, and accepted. (ECF #229, Order, p.11).
The operative complaint charged 23 defendants: Myrl Serra, Sheri Price, Unknown
Representative of Patricia Kramer, Carol Werner, David Romero, Joe Quintana,
Fred McKee, Bill Raffew, Chris Weldon, Benjamin Schroeder, Delta County,
City and County of Denver, Gilberto Lucio, James Dixon, Adam Barrett, Darin
Desel, Perry Speelman, Joel Smith, Jesse Rembert, Jay Lopez, Michael O'Neill,
Jeff Watts, and Ed Grumiger. Five claims were plead: (1) conspiracy; (2) malicious
prosecution — 4th and 14th Amendment violation; (3) unreasonable search and seizure —
4th and 14th Amendment violation; (4) unreasonable and excessive force — 4th and 14th
Amendment violation; and (5) monell claim — 4th and 14th Amendment Violation. (ECF #244.)

Only Delta Defendants motioned the Court for dismissal. [ECF # 271, 272,
273, and 274]. Mr. Carbajal responded negating dismissal. [ECF # 303, 304, & 305],
Replies were filed to those Responses by the Delta. (ECF # 327-30).

On August 29, 2012, an Order and Recommendation was entered granting in
part and denying in part the Delta Defendants joint motion for dismissal and Sheriff
Deputies' motion for dismissal (ECF # 271 & 272), and granted the prosecutions and County's
motion to dismiss. (ECF # 273, 278). In particular, the Court recommended dismissal
of the Prosecution Defendants based on failure to debit the destruction of evidence
that caused Mr Carbajal's wrongful prosecution. — Failure to state a claim. (ECF #369, pp. 26-
27). More, the Court recommended dismissal of Plaintiffs' Monell claim against Delta
County based on the premise that the County is not amenable for want of super-
visory authority over the sheriff and its deputies. (ECF #369, Recomm. pp. 12-14).
Finally, the Court suggested dismissal of the Plaintiffs procedural due Process
malicious prosecution claim, based on the false premise that he was give fair process.
(ECF #369, pp. 14-16, 33-35).

Mr. Carbajal filed a detailed objection to the issues addressed by the Magistrate
in her Recommendation, negating dismissal of Delta and Prosecution Defendants,
and improper dismissal of Fourth Amendment and Procedural Due Process claims, including
the Court's erroneous finding of facts that distorted the pleadings (ECF # 382, pp. 1-21).

The District Court approved and adopted the Recommendation with the
exception of one conclusion, the dismissal of the Procedural Due Process claim
which the Court rejected. (ECF #390, Order, pp. 3-5).

Thereafter, the Court set the scheduling Conference and set the presumptive

4

deadlines and discovery limits, (ECF #413, pp 1-3).

    2.   Summary Judgment Proceedings.

    The Defendants filed motions for Summary Judgment based on the alleged absence of evidence of personal participation, failure to name the proper defendants, and the purported existence of probable cause to arrest and search, (ECF # 691, 697, 700, and 714). However, because discovery was incomplete and was open up until August 4, 2015. (ECF #712), Mr Carbajal could not respond.

    Due to limited access to the law library at AVCF - Colo. Dept. Corr., Mr. Carbajal was unable to review all of the evidence discovered, (ECF #724). As such, an extension was granted up until September 17, 2015. However, an additional extension was needed due to Mr. Carbajal transfer to the Federal Court for a separate civil action, where he was denied complete access to this discovery evidence and his case file. (ECF #727), which, the Court granted up until October 17, 2018 (ECF # 730).

    Because the defendants continued to conceal material evidence, and sought to designate nonparties at fault at the summary judgment phase, Mr. Carbajal motioned the Court to reopen discovery and stay proceedings. (ECF #731, pp. 1-6)

    In addition, a motion for Sanctions and emergency hearing was filed to address the Denver and State defendants continued concealment of thousands of documents needed to effectively respond to summary judgment. (ECF #733, p. 1-8).

    And in an abundance of caution, Mr. Carbajal filed a third motion for extension of time to respond to Summary Judgments due to defendants withholding of evidence and oppressive conditions of confinement — denial of law library access, copies, and forced labor. (ECF # 740, pp. 1-3).

    In fact, an additional motion to stay Summary Judgment was filed on October 16, 2018, (ECF # 741), pending the resolution of the discovery and sanction issues.

    The Court entered an order denying Mr. Carbajal's motion to Compel evidence, (ECF # 653), motion to Open Discovery, motion for Sanctions and Emergency Hearing, motion for Stay of Summary Judgment Proceedings, and Mr. Carbajal's third motion for extension of time (ECF # 731, 733, 740, 741). As such, the Plaintiff was effectively denied an opportunity to compel

evidence needed to controvert Summary Judgment that existed, and denied an opportunity to file responses to Summary Judgment. (ECF# 758)

On December 2, 2015, Mr. Carbajal filed a response to State Defendants Motion for Summary Judgment controverting the States statement of material facts. (ECF# 755), and was buttressed by an Evidence Index and documents that effectively debunked Summary judgment. (ECF# 761, nn. 1-10). Still, the Court unfairly rejected Mr. Carbajals Response and evidence, and struck them from the record. (ECF# 762; nn. 1-10). An objection was filed by Mr. Carbajal. (ECF# 762), but overruled by the Court, ignoring the misapplication of Rule 12(b) (ECF#772,884).

On February 17, 2016, the magistrate recommended that the State, Delta, and Watts Defendants motions for Summary Judgment be granted, (ECF# 783, pp. 1-57), and recommended that Denver defendants motion be granted in part, and denied in part. In her findings, the magistrate overlooked a detailed Declaration of Truth, (ECF# 119-2) filed by Mr. Carbajal, Response to Discovery (ECF# 541,nn. 11-54), Verified Complaint (ECF# 249-1), and the Public Record in case no. 99CR296, that was attached to Plaintiffs' Evidence Index (ECF# 761, pp1-139; 761-2, pp. 1-39); evidence, that established a prima facie case of false arrest, imprisonment and malicious prosecution (ECF# 783, pp. 1-57). Instead, the Court found the absence of personal participation by various parties and that probable cause existed to arrest and prosecute Mr. Carbajal with respect to the remaining counts in err, (ECF# 783, pp. 7-22, 30-55), and further rejected municipal liability. Id.

Mr. Carbajal filed a motion for an extension to file an objection to magistrates Recommendation (ECF# 791), which the Court granted up until March 14, 2016. (ECF# 793). However, Mr. Carbajal never received this Order, and learned of the grant of an extension from the Clerk. During this conversation, the Clerk mistakenly advised Mr. Carbajal that he was granted an extension of time up until March 23, 2016 to file an objection. See (ECF# 811, nn. 2-3). Relying on the Clerks statements that March 23, 2016 was the deadline, Mr. Carbajal filed a second motion for Extension of Time based on extraordinary circumstances — illness and limited law library access. (ECF# 801, pp. 1-3). However, the Court denied this motion based on the Courts belief that Mr. Carbajal was well. (ECF# 802).

Four days later, the District Court entered an order accepting in part and rejecting in part the magistrates Recommendation (ECF# 783)(ECF# 804).

3.  Plaintiff's Rule 59 and 60 motion based on intrinsic and extrinsic Fraud.

On April 20, 2016, Plaintiff filed a Rule 59 and 60 motion based on the Court's improper denial of an extension and grant of summary judgment which was clear err and further revealed Defendants fraud that compelled summary judgment in err. (ECF # 811). This motion was followed by an Evidence Index (ECF # 826)(Exhibits 1 through 141). Thousands of pages of material evidence were presented supporting Defendants fraud and deliberate concealment of the existence of a genuine issue of material fact. (ECF # 906, pp. 1-4).

The Denver and State Defendants responded accordingly, but failed to negate their fraud at the Summary Judgment phase, that compelled dismissal. (ECF #814,824,823).

Given the seriousness of this fraud and overwhelming evidence of fraud, the Plaintiff moved the Court for a hearing to substantiate his fraud claim. (ECF # 834). Unfortunately, the Court ignored this Fraud and denied Mr. Carbajal a hearing. (ECF # 881, pp 1-2). The Court denied this Rule 59 and 60 action without consideration. (ECF # 890, pp 1-3). An objection was made by Mr. Carbajal. (ECF # 906, pp. 1-4).

A second Rule 60 motion was filed by Mr. Carbajal revealing the recently discovered evidence exposing the State Defendants' additional deception used to compel entry of summary judgment and wrongful dismissal of the Correctional officers at the pleading stage, and accidental naming of Denver Police officers for the october 17, 2009 illegal search and seizure. This Fraud upon the Court proves that warner and Quintana had been involved in the illegal revocation and false arrest well before 2006, as alleged, and that CDOC officers had lied about their involvement in the illegal seizure of Mr. Carbajal's premises. (ECF # 905, Rule 60 Mot., pp. 1-16)

The Defendants for the State and Watts responded, arguing that they never received the documents allegedly concealed, (ECF #914 & 916), but could not deny that the evidence presented at Summary judgment was deceptive and fraud.

On June 28, 2017, nearly 16 months later the Trial Court entered an Order denying Plaintiff's motion for an order to Reopen case in err, ignoring Fraud. (ECF # 944, pp 1-8).

The Plaintiffs now appeal the Trial Courts Final judgment and trial errors. (ECF 962, 913, 161).

C.  Facts Relevant To Issues On Appeal.

1.  The Prosecution, Probation and Doth Defendants conspired to maliciously prosecute Mr. Carbajal, and in furtherance of this conspiracy wrongfully revoked an illegal and false deferred sentence based on false affidavits and destroyed evidence, and wrongfully arrested and prosecuted him.

In August 2001, Mr. Carbajal entered an Alford Plea to an assault charges

while protesting his innocence, and was sentenced to a four year deferred sentence that expired by virtue of law August 30, 2005 under the rubric of CRS § 18.-1-3-102.

On August 30, 2005, Mr. Carbajal's deferred expired by law thus divesting the State of jurisdiction to arrest Mr. Carbajal or prosecute him. In fact, the defendants Serra, Price, Kramer, Quintana, Warner, and Romero, knew and acknowledged that no jurisdiction or probable cause existed to arrest and prosecute Mr. Carbajal for a probation violation in case 9908'96 thereby, violating Plaintiff's 4th and 14th Amendment rights.

Well before the decision to wrongfully revoke Mr. Carbajal's hypothetical and false deferred sentence in case 9908'96 - Delta County, the Prosecution and Probation defendants conspired to manufacture probable cause to arrest Mr. Carbajal for violating the deferred sentence: First, by creating a false deferred by altering legal contracts and records, and destroying legal documents that showed an expired deferred sentence;' Secondly by jointly submitting false affidavits for Mr. Carbajal's arrest based on false information that Mr. Carbajal is on a deferred sentence and violated this deferred, which, is false.

In 2006, in response to the illegal revocation and false arrests, Mr. Carbajal repeatedly protested this illegal conduct, and in direct retaliation the Delta Sheriff defendants conspired to force Mr. Carbajal to accept and sign contracts extending the illegal deferred sentence by attacking and intimidating him.

    a. The Defendants destroyed exculpatory evidence and manufactured probable cause to wrongfully arrest, prosecute, and confine Mr. Carbajal.

Initially, the Prosecution and Probation defendants made a mutual decision to fabricate a false deferred sentence. Defendants Serra, Kramer, Price, Warner, Romero, and Quintana, each altered legal documents and destroyed original contracts and conditions of probation that dictated a concurrent sentence, that supported that the deferred expired — Mr. Carbajal's innocence. (ECF # 2494, p. 6 ¶35)(plea agreement)

Thereafter, the Probation Department (Warner, Romero, and Quintana) collectively decided to wrongfully revoke Mr. Carbajal's false deferred judgment with full knowledge no jurisdiction or authority existed to support this false arrest, and then drafted affidavits containing known falsities "that Mr. Carbajal is on a deferred sentence for sexual assault and violated the terms and conditions with full knowledge [his]...deferred had expired by operation of law;" thereby, instituting legal process maliciously and arresting Mr. Carbajal without probable cause. (ECF # 2494, Compl. p. 6 ¶6)`(ECF # 541, Discov. Resp. p. 27) (the record makes clear that Quintana and Romero falsely stated that "the defendant was placed on probation on 1-14-00 for two years by virtue of his conviction of... assault." to mislead the court into believing that a valid probation sentence existed, omitting that

the deferred had been entered on August 30, 2001 as a result of an Alfred plea, not a conviction, and more that the deferred expired on August 30, 2005. These distortions and omissions prevented the Court from noticing the absence of jurisdiction to issue an arrest warrant and absence of probable cause to arrest Mr. Carbajal. (Id. at pp. 27-28.)

In particular, the application to revoke deferred sentence was first filed on April 25, 2006, which was clearly outside the applicable four year period established by law. In addition, Warner, Romero, and Quintana omitted material information, specifically that no jurisdiction existed or authority to revoke the deferred sentence, with the intent to prevent a fair determination of the existence of probable cause and to mislead judicial officers into establishing an improper timeline for the applicability of the statutory 4 year period in which a deferred may be revoked. Clearly, the Prosecution and Probation defendants wrongfully revoked Mr. Carbajal's false deferred without jurisdiction, and still, repeatedly submitted false affidavits for his arrest (April 26, 2006, April 27, 2007, March 10, 2008, and August 21, 2008) with full knowledge no probable cause existed or legal basis to revoke under CRS § 18-1.3-102, as set forth in People v. Simonds, 113 P.2d 762 (Colo. 2005). (ECF # 249-1, Complaint, pp. 6-7, ¶¶ 37-39.) This false arrest, prosecution, and wrongful confinement violated Mr. Carbajal's civil rights under the 4th and 14th Amendment, causing him great injuries.

       b. Delta Sheriffs defendants coerced Mr. Carbajal into accepting an illegal deferred and into complying with that illegal deferred's probation.

In 2006, Deputy Sheriffs Chris Walden and Brian Schroeder used unreasonable force and coercion to instill extreme fear in Mr. Carbajal with the purpose and mindset to force him to accept the prosecutions illegal deferred, and more force, later, to sign the deferred agreement, which called for the extension of the deferred sentence without jurisdiction, with knowledge Mr. Carbajal was falsely arrested, and wrongfully prosecuted, and that their actions were contributing and establishing an illegal means to revoke the deferred. This conspiracy to violate Mr. Carbajal's civil rights following the policies and practices of Delta Detention Center and Delta County of using unreasonable force and coercion to force Mr. Carbajal to accept the illegal extension of his deferred. Specifically, in July 2006 while Mr. Carbajal was placed in a holding cell at Delta County Jail, Deputies Schroeder and Walden stripped and brutally beat Mr. Carbajal to the ground, kicking him repeatedly to cause injury, leaving him injured and in pain. Schroeder then threatened Mr. Carbajal, "if your smart-y ass will take what the District Attorney gives you. The life expectancy of sex offenders is short in these parts." These abuses were taken with complete disregard for Mr. Carbajal's rights and well being, and were deliberate acts taken with confidence and knowledge that their illegal acts would be approved by McKee and Bailey. In fact, McKee

9

and Railey were present and laughed at the abusive acts of Weldon and Schroeder, responding "Nope, they're starting to disappear, better do what the DA wants"; approving these unconstitutional acts. No effort was given to discipline or prevent these clearly wrong acts. Railey, Weldon and Schroeder continued to beat and threatened Mr. Carbajal instilling extreme fears as they demanded "... do what the DA wants" forcing Mr. Carbajal to accept and comply with the illegal deferred. (ECF # 249-1, pp. 7-8, ¶ 41).

In August 2006, Weldon and Schroeder assaulted Mr. Carbajal again, repeatedly kicking him while he was on the ground in a cell without justification, threatening him "You just don't learn, we told you to do what the DA went."

On August 18, 2006, at the conclusion of a hearing, Judge Charles Greenacre ran off the bench in a fury and slammed a pen and probation contract in front of Mr. Carbajal in a threatening manner demanding that he sign the probation agreement. However, Mr. Carbajal declined to sign this agreement; and in direct response, Railey forcefully grabbed Mr. Carbajal and transported him to the jail and threatened him, "You're not getting the hint. Your going to sign that paper when we get back or else you're not going to be around very long. We have special ways of dealing with people like you" and further stated, "People get sick and sometimes don't wake up," thus, leaving Mr. Carbajal to believe that he would be killed. Thereafter, Railey turned Mr. Carbajal over to Schroeder, who escorted him to a holding cell, and threatened him, "Sign the paper and give it to me and write an apology to the court." Schroeder slammed Mr. Carbajal into his cell yelling, "that's what you get for pissing off the Judge." (ECF # 249-1, p. 8 ¶ 43); See also People v. Carbajal, Dist. Ct., case no. 99CR96, August 21, 2006 ("Letter from Def. with signed second page of terms and conditions of probation") It was this contract that the Prosecution and Probation Defendants used as a basis to illegally file the deferred sentence, despite all parties admission that jurisdiction did not exist, as recognized by the Colorado Supreme Court. See People v. Carbajal, 198 P.3d 102, 106(Colo. 2008)(The [Defendants] explicitly stated [they] lacked authority to extend Carbajal's deferred judgment beyond the four-year statutory maximum"). Consequently, Mr. Carbajal was repeatedly falsely arrested and maliciously prosecuted, and confined; as well as convicted for this false charge and illegal deferred sentence; therefore, violating his 4th and 14th Amendment rights, and virtually destroyed Mr. Carbajal's life.

  c.  Lucio and Quintana conspired with others to force the revocation of Mr. Carbajal's illegal deferred judgment sentence.

In February 2009, Mr. Carbajal discovered through an investigation that Gilberto Lucio worked with Quintana and Romero to wrongfully compel the revocation of the illegal [1] The Court may take judicial notice of public records in case 99CR96. Tal v. Hogan, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006)

deterred in an effort to destroy his life and stability. In fact, Lucas stalked Mr.Carbajal throughout Denver — following him at school, places of residence, and work, and repeatedly slandered and defamed him by pushing a false narrative that "Mr.Carbajal is a sexual predator that failed to register" with the intent to destroy his stability and compelling a revocation by stripping Mr. Carbajal of his stability. As such, Mr. Carbajal was forced to quit his job and drop out of school, and more was evicted from his apartment and alienated by his family and community, leaving him homeless and in a shelter. Mr.Carbajal was completely destroyed emotionally, socially, and financially, which forced him into exile, and therefore compelled the revocation of the deferred and his wrongful arrest and prosecution. (SCF # 2494, pp 940 ¶ 49-50).

d. The Colorado Supreme Court condemned the defendants illegal arrest and prosecution of Mr.Carbajal, and dismissed this illegal deferred.

In December of 2008, the Colorado Supreme Court found that the Defendants had illegally imposed a deferred sentence contrary to Statutory laws and illegally revoked the deferred, in that, it had expired by operation of law on August 30, 2000 — 4 years after Mr.Carbajal entered his plea and the 4 year deferred had been entered by the Court. Indubitably, probable cause did not exist to arrest or prosecute Mr.Carbajal for violation of the deferred, which by law did not exist; thereby, violating Mr. Carbajal's 4th and 14th Amendment rights.

2.   The Denver Defendants conspired with each other to silence Mr.Carbajal and derail his civil actions for malicious prosecution.

Lucas's conspiratory acts infected the mindset of local law enforcement, and compelled the repeated harassment, assaults, illegal searches, false arrests, and malicious prosecution of Mr. Carbajal in furtherance of a single minded effort to violate his 4th and 14th Amendment rights, with an evil intent to silence him and prevent his exposure of official corruption.

a.   Illegal home invasion on April 29, 2009 at 28th & California, Denver.

The Denver Police Department, following a well settled and department wide policy and persistent practice of breaking into citizens' homes without consent or a warrant, broke into Mr. Carbajal's home and attacked him. Specifically, Officers Spellman, Dixon, Devel (Anthony Schluck) and Barrett broke open the front door by forcefully prying the door opened breaking the lock, and entered the premises without consent or a warrant. Dixon and Barrett charged up stairs and grabbed Mr.Carbajal. Dixon slammed Mr.Carbajal on the stairs, wrenching his shoulder until it separated, twisting

his wrists and then repeatedly struck him in the head, injuring him. (ECF#249-1,p.12).

Mr. Carbajal was dragged outside his home and arrested, while the remaining officers Speelman, Schluck, and Barrett search the premises without legal basis. The remaining officers damaged and stole property, as they illegally searched the premises in violation of Mr. Carbajal's civil rights. (ECF# 249-1, pp. 11-12, ¶136-57)

No grounds or legal basis existed to invade Mr.Carbajal's home or even arrest him. And, to cover up this illegal arrest and search, Speelman, Dixon, and Date (Schluck) intentionally falsified an affidavit stating that Mr.Carbajal was standing behind his front door and refusing to obey commands to open the doors, to mislead judicial officers into issuing false charges and prosecuting Mr.Carbajal without probable cause. More information was omitted that no warrant was issued and that officers broke open the front door and arrested Mr. Carbajal, as well as that no evidence of a crime or ordinance violation existed, which vitiated probable cause. (ECF #119-1, Decl. pp. 34-35, 38)

Accordingly, Speelman, Dixon, Schluck (Date), and Barrett worked together to wrongfully prosecute Mr. Carbajal for disturbing the peace and interference, and aided and abetted in the illegal search of the premises, which amounted to malicious prosecution of Mr.Carbajal as proscribed by the 4th and 14th Amendments and for want of probable cause; the City Attorney dismissed these false charges.

      b. Home Invasion on October 13, 2009 at 71st and Zenobia, Westminster

On October 13, 2009, two Colorado Department of Corrections Officers conspired with one another and others to violate Mr. Carbajal's 4th and 14th Amendment rights by illegally forcing their way into Mr.Carbajal's residence. In furtherance of this conspiracy, CO Burch and Bogner went to Mr.Carbajal's residence with the purpose to invade his privacy and silence him; and without consent Burch and Bogner forced forced their way into the residence without a warrant or probable cause, with their the arms out as they ran through the home yelling pro-torturer's; therefore, violating Mr. Carbajal's 4th and 14th Amendment rights. (ECF#249-1,p.13); (ECF#119-1, Decl. pp. 35,39,42)

Noting, that these two officers were named as Denver Police officers due to the Colorado Department of Corrections fraudulent statements that their Staff had absolutely no involvement with this abusive search of a non-DOC citizen. Mr.Carbajal was not on parole or a DOC client; thus, Burch and Bogner's actions were egregiously illegal. The identity of these perpetrators was not discovered until late 2016, when CDOC disclosed chronological reports in a separate action. See (ECF#905, pp. )

1-16).

c. Home invasion on April 5, 2010 at 23rd Arapahoe, Denver.

On April 5, 2010, Officer Rembert and Smith conspired with one another and others to violate Mr. Carbajal's civil rights by illegally searching his premises and wrongfully prosecuting him. More specifically, Rembert and Smith entered Mr. Carbajal's residence under false pretenses—false premise that Mr. Carbajal had consented entry, despite knowing that no valid consent or legal basis to enter the premises. Still, Rembert and Smith abusively entered the premises and conducted an excessive and invasive search without legal consent, a warrant, or exigent circumstances. To cover up this abusive home invasion, these officers staged a crime scene by positioning a safe that allegedly contained drugs on a table in plain view, and falsifying affidavits that Mr. Carbajal had in his possession and control the safe and that it was open in plain view; which purposefully omitted that the safe was hidden behind a couch with personal and private property of Kyle Kellum — a person who had just moved in to the Apt. 409, and that no consent was granted to enter the premises or a warrant that would legally justify a search. It was for this reason the Prosecution dismissed these charges at the preliminary phase, given the obvious lack of probable cause. (ECF #249-1, pp. 13-14); (ECF #541, pp. 29-31)

3.    Victoria Carbajal Protested The Illegal Prosecution And Conspiratory Acts Of Quintana Lucero, Watts And Others And Was Threatened And Attacked In Direct Response To Her Protests And Complaints In Exercise Of Her First Amendment Rights

In 2006, Ms. Carbajal repeatedly protested Delta Prosecution, and Probation Defendants illegal and malicious prosecution of her son, and in direct response these Defendants repeatedly attacked her family to silence her protests and break her spirit, destroying her emotionally and financially; thereby, transgressing her 1st Amendment rights. In fact, the Defendants recklessly and maliciously attacked Ms. Carbajal's son to intimidate her; and when these protests continued, Watts and other officials threatened to arrest her and prosecute her. (ECF #107, Compl., ¶¶ 50, 107, 283-86). This abusive retaliation was unjustified and, moreso, was designed to silence a whistle blower contrary to the 1st Amendment, causing Ms. Carbajal serious emotional distress.

## SUMMARY OF ARGUMENT

This present action reveals a sad truth concerning the systematic denial of access to the Court and denial of fair administration of justice to two poor citizens, that embarked on a pro se mission to vindicate and protect their rights. In fact, the Court unfairly delayed this action for nearly a decade, as it assisted the Defendants in escaping liability for their intentional violation of the Plaintiffs rights, while it repeatedly misapplied the law

to coerce its dismissal of valid claims with logic; therefore, corrupting the fairness of proceedings in direct violation of Plaintiffs' Seventh and Fourteenth Amendment rights. This is not a case of failure to plead or a deficient pleading case, but rather this is a case of unfair tipping of the scale in favor of the defendants. For instance, the Court imposed an oppressive page limit on the complaint, which prevented Mr. Carbajal from detailing the Defendants' actions and raising other constitutional deprivations; thus, concealing the Defendants' conspiracy to falsely arrest, maliciously prosecute, and torture Mr. Carbajal, as well as violation of Mr. Carbajal's civil rights. Accordingly, the process afforded to the Plaintiffs in this action error injustice.

As an initial matter, the complaint and declaration presented sufficient facts from which a jury may reasonably infer that the Defendants maliciously prosecuted, falsely arrested, and retaliated against the Plaintiffs; thereby, ensuring an entitlement to relief under §1983. Even assuming there was a defect in the pleadings, the Court's identification of these defects with an opportunity to amend, would have cured any deficiencies; therefore, allowing Plaintiffs to pursue meritorious claims.

Secondly, the Court granted Defendants summary judgment in err, and overlooked Plaintiffs' verified pleadings, discovery responses, Declaration of Truth, Public Record that established a genuine issue of material — a prima facie case of malicious prosecution, false arrest, illegal search, and conspiracy; therefore, negating summary judgment and begging a trial.

Thirdly, the Court denied Mr. Carbajal discovery and leave to amend complaint based on defendants fraud in err, despite a need for evidence and clarification regarding parties at fault, which is evidence that was in defendants possession and control, but concealed; thus, preventing a manifest need for a stay of summary judgment and reopening of discovery.

Accordingly, the underlying action was improperly dismissed at the pleading and summary judgment phase of proceedings in a manner that defies our fundamental conception of fairness, despite the meritorious nature of these claims and obvious culpability of the Defendants. Therefore, the Court of Appeals should reverse and remand for a trial on the merits.

## ARGUMENT

1. The Trial Court Erred In Dismissing Plaintiffs' Complaint, Because The Pleadings Alleged Facts From Which A Jury May Reasonably Infer That Defendants Violated Plaintiffs' Constitutional Rights Under The Rubric Of The First, Fourth And Fourteenth Amendment.

The Court of Appeals should find that the factual pleadings State a viable 1st, 4th and 14th Amendment claim, and reverse the extant judgments and remand for further proceedings.

A. Standard of Review and Preservation

A Rule 12(b)(6) dismissal is subject to de novo review, as well as the same standard

as the district court. Doe v. City of Albuquerque, 667 F.3d 1111, 1115(10th Cir. 2012). In the absence of an issue of facts, the question of whether a complaint states a claim for relief is one of law for the Court. Dewell v. Lawson, 489 F.2d 877, 880 (10th Cir. 1974).

In its recommendation, the Magistrate dismissed Plaintiffs' claims at the pleadings stage against the Delta County and Prosecution Defendants, and dismissed Mr. Corbail's claims for want of standing. (ECF#198, pp. 16-18, 18-22, 31); (ECF# 369, pp. 26-27, 39-44). Plaintiffs objected, (ECF# 211, pp. 210); (ECF#382, pp. 1-24), but the Court overruled this objection. (ECF# 229, pp. 1-13); (ECF# 390, pp. 3-5).

B.    Mr. Corbail Stated a Fourth and Fourteenth Amendment Malicious Prosecution Claim Against the Prosecution and County Defendants

Under Rule 12(b)(6), Fed. R. Civ. P., a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." The basis of a Rule 12(b)(6) motion is to test the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true. Mobley v. McCormick, 40 F.3d 337, 340 (10th Cir. 1994). To survive a Rule 12(b)(6) motion, "the complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support... Plaintiffs' allegations. Shero v. Chad Grove, 510 F.3d 1196, 1200 (10th Cir. 2007).

A malicious prosecution claim under the Fourth and Fourteenth Amendment requires a showing that: (1) Defendants caused Plaintiff's continued confinement or prosecution; (2) the action terminated in Plaintiff's favor; (3) the arrest or continued prosecution lacked probable cause; (4) Defendant acted with malice; and (5) sustained damages. Wilkins v. DeReues, 528 F.3d 790, 799 (10th Cir. 2008). However, the common law elements are just a "starting point" for a §1983 malicious prosecution claim in that "the ultimate question in such a case is whether Plaintiff has proven the deprivation of a constitutional right." Id.

Without question, all errations before the Court adequately state a 4th and 14th Amendment claim. Therefore, this Court on de novo review, should reverse the extent judgment.

1.    Mr. Corbail Stated a Fourth and Fourteenth Amendment malicious prosecution claim against the Prosecution Defendants.

The Trial Court erred in finding Mr. Corbail failed to state a claim against the Prosecution Defendants Serra, Price and Kramer; therefore, this Court should find that the complaint stated a viable 4th and 14th Amendment claim against the Prosecution Defendants.

Mr. Corbail has specifically alleged that Defendants Serra, Price, and Kramer: (1) caused Mr. Corbail's continued confinement, false arrests, and prosecution by submitting false affidavits for his arrest; and altering and destroying the "evidence plea agreement and contracts that established a concurrent sentence..." (ECF# 249-1, ¶¶ 9, 16, and 17); (2) this wrongful prosecution "and wrongful conviction was dismissed and vacated in favor of Mr. Corbail in 2008 after a successful appeal." (ECF# 249-1, p. 17 ¶81); (3) lacked probable

cause to arrest and prosecute Mr. Corbasial "with full knowledge no jurisdiction existed or grounds to believe the deferred sentence was acceptable" under Colorado's law, (ECF # 249-1, p. 17 ¶ 81); (4) act with malice by falsifying plea agreements and other documents to manufacture probable cause; "evincing a complete ... disregard for the truth," (ECF #249-1, p. 17 ¶ 81; and (5) injured Mr. Corbasial by "maliciously subjecting [him] to multiple arrests nearly three years of continued confinement without probable cause, and a wrongful conviction." (ECF # 249-1, p. 17 ¶ 81. "As a legal and proximate result of the Defendants abuses detailed herein, Mr. Corbasial was deprived of his 4th and 14th Amendment rights." (ECF # 249-1, p. 17 ¶ 181).

And while this short claims statement meets the threshold notice requirements and plausibility standards, which do not require detailed factual allegations, these factual assertions are further enhanced by the factual background set forth in section C. nature of the case, which sets the context for the Prosecution's fabrication of evidence and destruction of evidence; and provides in pertinent part:

> In August 2001, Mr. Corbasial entered an Alford Plea to a... assault charge that he admittedly professed his innocence to, and was sentenced to a four year deferred sentence that was set to expire on August 30, 2005, per statutory law governing deferred sentences —CRS 818-1.3-102; Mr. Corbasial was advised and agreed to an additional sentence for four years to run concurrently to his deferred sentence and formalized this contract in writing.

(ECF # 249-1, p. 5 ¶ 29); which details the original state of the record and contract that occurred in plea negotiations and entry of judgment. This "back drop" is followed by the narration of Prosecution Defendants Serra, Price, and Kramers misconduct and destruction of this evidence that exculpated Mr. Corbasial by showing that the deferred no longer existed;

> Well before the decision was made to actually revoke Mr. Corbasial's deferred... in case no. 96CR96 in Delta Colorado; the Prosecution, Kramers, Serra, Price, Kramer, Werner, Romero, and Bunstone and others in their roles as investigators, in an effort to intentionally cause Mr. Corbasial injury in a single minded effort to obtain an arrest and conviction no matter what the evidence or methods, conspired to manufacture probable cause that Mr. Corbasial... violated his deferred... by establishing a false and fabricated sentence through the alteration of legal contracts and ... records and destroyed ... documents that supported that the deferred... was concurrent and... expired, evidence that supported Mr. Corbasial's innocence; and ... resulted in Mr. Corbasial's unconstitutional revocation, arrest, prosecution, conviction, and continued confinement. 32. To prevail in this joint venture to wrongfully arrest, prosecute convict and confine Mr. Corbasial for the violation of his deferred sentence; the Prosecution Kramers, Serra, Price, and Kramer... collectively worked together... and mutually agreed to alter the record to reflect a deferred sentence consecutive to the four year Department of Corrections sentence... to destroy... evidence that supported a concurrent factor, that would establish Mr. Corbasial's innocence

(ECF # 249-1, pp. 5-6, ¶ 31-32). This factual narrative spells out a clear conspiracy to maliciously prosecute Mr. Corbasial, and is further developed in paragraphs 35, which explains that:

> In 2005, the Prosecution —Kramer, Serra, Kramer, Price, and others made a

mutual decision to fabricate a false sentence in conjunction with the Probation Department — Warner, Romero, [and] Quintana ... And reconstituted this by altering legal documents and destroyed original documents to prevent... discovery of their fraudulent acts, Raines, Serra, Kramer, and Price ... altered the ... plea agreement and destroyed the contracts and conditions of probation that dictated a concurrent sentence supporting Mr. Carbajal's innocence.

(ECF #249-1, p. 6 ¶135). As such, Mr. Carbajal has more than given the Court reason to believe that he has a reasonable likelihood of mustering factual support for his claims. Ridge at Red Hawk, LLC. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007).

Accordingly, the Court erred in holding that Mr. Carbajal failed to allege sufficient facts to establish causation with respect to the false arrests and wrongful prosecution, and overlooks the fact that the original deferred existed by law, thus, divesting the prosecution of jurisdiction to arrest and prosecute Mr. Carbajal, and that the Prosecution manufactured a false deferred to justify its arrest and prosecution of Mr. Carbajal. This Court, on de novo review, should reverse the Courts' judgment and remand this case to proceed on the merits. (ECF #369, p. 29).

   a.  Prosecutorial immunity was not applied.

The Trial Court erred in holding that the Prosecution deserved prosecutorial immunity for their complaining witness conduct. (ECF #198, p. 19). Review of a Court's grant of absolute immunity is de novo. Myers v. Koopman, 462 Fed. Appx. 823, 824 (10th Cir. 2012). This misapplication of law rises to the level of a manifest miscarriage.

In determining which categories of official action are entitled to absolute immunity, Courts employ a "functional approach," and, then looks to the nature of the function performed, not the identity of the official actor or his job title. Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993) while activities "intimately associated with the judicial phase of a criminal process" are entitled to absolute immunity. Imbler v. Pachtman, 424 U.S. 409, 430 (1976), a prosecutor's investigative function that do not relate to absolute immunity." Buckley, 509 U.S. at 273. "The analytical key to prosecutorial immunity is therefore, advanced." Scarlock v. Thompson, 330 F.3d 791, 798 (6th Cir. 2003). As such, the Court must "distinguish between the prosecutor's quasi-judicial role warranting... immunity and this police-related work not accorded such immunity." Atkins v. Lanning, 556 F.2d 485, 488 (10th Cir. 1977).

Particularly instructive is the Supreme Court's holding in Kalina v Fletcher, 522 US. 118,131 (1997). In Kalina v. Fletcher, the Supreme Court declined to extend absolute immunity to a prosecutor for executing certification for ex parte determination of probable cause and motion for an arrest warrant, since she was acting as a witness and outside the scope of an advocate. See also Mink v. Suthers, 482 F.3d 1244,1261 (10th Cir. 2007)(Prosecutor not immune for drafting affidavits and recreating affidavit for probable cause); Cruz v. Kauai County, 279 F.3d 1064, 1067-68 (9th Cir. 2002)(Prosecutor not immune for swearing to altered facts in support of ex parte bail revocation motion — acted as witness).

Extending these principals here, makes it patently clear that Prosecution — Serra, Kramer,

and Price are unable to immunize their conspiration conduct alleged in the complaint, specifically the Prosecution's reviewing of affidavits and drafting to establish probable cause to arrest, which contained material falsities and omissions designed to compel McCorkindale's wrongful arrest and prosecution. Particularly this abusive conduct was the functional equivalent of a complaining witness. (ECF #119, p. 6)("Serra "directly participated in the preparation and review of false affidavits utilized to arrest, prosecute, and convict.")(ECF #219-1, p. 7, ¶38)(malicious decision to prevent false affidavits). Thus, a fact based analysis of the Prosecution-Serra, Price, and Named's conduct make it clear that advocacy was not the function abused when these Defendants fabricated a false affidavit and arranged and reviewed false affidavits for arrest and prosecution of McCorkindale under the rational of Mink. Id, 482 F.3d at 1261.

In sum, the Trial Court erred in finding that the Prosecution Defendants Investigation and conspiration witness conduct was entitled to absolute immunity (ECF #229, p.9). Therefore, this Court should reverse the extant judgment and remand to proceed on the merits.

    C.    Ms. Corbaral Stated a First Amendment Retaliation Claim.

    The Trial Court erred in finding that Ms. Corbaral failed to state a claim against Defendants and lacked standing. (ECF #138, p.3). As such, this Court should find Ms. Corbaral stated a First Amendment retaliation claim against Wealtto, Dollu, and State Defendants, or alternatively, grant her leave to amend the pleadings to cure any deficiency.

    "The First Amendment forbids ... attacks from retaliation against [citizens] for exercising the right to free speech." Crawford-El v. Britton, 523 U.S. 574, 588 n.10(1998). "The reason why such retaliation offends the constitution is that it threatens to inhibit exercise of the protected right." Id. To establish a retaliation claim, a plaintiff must show: (1) the speech or conduct at issue was protected; (2) defendants took adverse action against Plaintiff; and (3) there was a causal connection between the protected speech and the adverse action." Essphal v. Board, 598 F.3d 119, 128 (2nd Cir 2009).

    Ms. Corbaral, specifically, alleged that she protected Defendant's illegal and abusive conducts which was protected speech, and that consequently Defendants repeatedly attacked her by arresting her son McCorkindale repeatedly and more threatened to arrest her in a bad faith effort to chill her interests. (ECF #107, Compl., para. 50, 107, 283-86). This retaliation conduct directly violated the Plaintiff Ms. Corbaral's 1st Amendment rights, causing her injuries both financial and serious emotional distress. Id.

    In summary, the Plaintiff Ms. Corbaral has standing to bring her 1st Amendment claim, and, thus, should have been permitted to amend her complaint; therefore, this Court should reverse the extant judgments and remand with leave to proceed on the merits, or alternatively remand with leave to amend the complaint to cure any deficiencies.

1. Ms. Corbariel has Standing to bring a First Amendment claim

The Court erred in dismissing Ms. Corbariel's claims with prejudice for want of standing despite the existence of a viable 1st Amendment claim. (ECF #1981, p. 31), and should reverse.

A plaintiff has standing to sue only if the defendant's conduct has caused her some actual injury or threatened to do so, and if a favorable court decision is likely to redress injury. Jornt Communications Co., L.P. v. APCC Service Inc., 128 S.Ct. 2531, 2535 (2008). And while a plaintiff cannot challenge the violation of someone else's rights, she is able to redress the violation of Mr. Corbariel's rights, where it is shown to have caused harm to her. See Nasbie v. Sollier, 896 F.2d 169, 178 n. 5 (3rd Cir. 1988)(Plaintiffs could challenge the failure to provide mental health services to administrator when that failure had effect on the Plaintiffs' safety). Indubitably, the repeated arrest of Mr. Corbajiel and wrongful prosecution resulted in the loss of Ms. Corbariel's home and security, in that, Mr. Corbariel was her financial support and care taker.

Irrespective, the complaint specifically seek redress for the intentional violation of Ms. Corbariel's First Amendment right to free speech, as detailed above; thereby establishing the "injury in fact" requirement for purposes of standing. As such, the Plaintiff has standing to bring a §1983 action to protect her 1st Amendment right to free speech and obtain relief for the violation of her civil rights.

Therefore, the Court should reverse the trial court's improper dismissal of Plaintiff's claims; and remand to allow further proceedings on the merits; or allow amendment of complaint.

D.  Mr. Corbariel Stated a Viable Municipal Liability Claim Against Delta County based on Its Unconstitutional Practices and Policies.

The Trial Court erred in dismissing the Plaintiff's claims against the defendant, Delta County, based on the misguided notion that Mr. Corbajiel had not established municipal liability and that Delta County DSCC is not liable for the actions of the Sheriff's and Probation Defendants. (ECF# 3691, pp. 39-44). Therefore, this Court should reverse.

Under §1983, an entity may be held liable for instituting or advocating an official policy or custom causing a violation of constitutional rights under the rationale of Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690-91 (1978). To establish a Monell claim, a plaintiff must show: (1) existence of a policy or custom; and (2) a direct causal link between the policy or custom, and alleged injury. Campos v. Thomas, 150 F.3d 1215, 1218 (10th Cir. 2008).

Mr. Corbariel has specifically alleged that Delta County had and has numerous unconstitutional policies and customs set off by its policy makers and wide spread practices, that directly caused the violation of Plaintiff's civil rights and his injuries. (ECF# 249-1, Compl., pp. 7-9, 22-23). For instance, the complaint details the uncon-stitutional policies set by Sheriff McKee, Warner, Serra, and Raines — Delta's policy makers:

... a policy, custom, and practice of: (1) revoking Mr. Corbaily's deferred sentence outside the applicable four year period; (2) intentionally ignoring statutory law and precident authority in handling deferred sentences; (3) harassing and assaulting Mr. Corbaily to coerce him into accepting the illegal extension of his deferred sentence; (4) destroying and/or fabricating evidence to establish a fraudulent deferred sentence; and (5) ignoring ethical misconduct and refusing to report... the intentional violation of Mr. Corbaily's constitutional rights.

(ECF# 249-1, p. 22 ¶116.) In addition, Plaintiff alleges that Delta had a policy of "failing to adequately train and supervise their subordinates Quintana, Romero, Rullen, Weldon, Schroeder, Price, Serra, and Kramer to:"

... (1) prevent the wrongful and intentional revocation of Mr. Corbaily's deferred without jurisdiction;'... (3) prevent the unnecessary and excessive use of force and harassment to coerce Mr. Corbaily into accepting an illegal deferred sentence; [and](4) prevent the intentional ignoring and circumvention of legislative law....

(ECF# 249-1, Compl, p. 22 ¶117).

These policies were followed by the Defendants Quintana, Rullen, Price, and Kramer and "had the direct effect of subjecting Mr. Corbaily to the deprivation of his 4th and 14th Amendment rights...; allowing the":

... (1) the wrongful revocation of Mr. Corbaily's deferred... without jurisdiction; (2) destruction of exculpatory evidence and manufacturing of inculpatory evidence to establish a fraudulent sentence; (3) coercion of Mr. Corbaily to accept and sign a contract allowing the illegal extension of his deferred;... and (5) an obvious conspiracy to unlawfully arrest, prosecute... Mr. Corbaily without probable cause.

(ECF# 249-1, p. 22). Being such, a valid Monell claim against Delta County was plead. See e.g. Jordan v. Jackson, 15 F.3d 333, 390 (4th Cir. 1994) (complaint stated a claim against county under §1983 when it alleged existence of several specific customs and policies); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1127 (9th Cir. 2002) (Only bare allegations required).

In summary, the Court's dismissal of Delta County was err as a matter of law. Therefore, this Court should reverse and remand for further proceedings on the merits.

    1.   Delta County is amenable for its Unconstitutional policies set off by its policy makers, under the rationale of monell.

The Trial Court erred in its holding that Delta County is not amenable for the unconstitutional policies set off by Sheriff McKee, Chief Warner, DA Serra and Romero, because "the BOCC does not have the legal authority to control or supervise the Sheriff and his deputies." (ECF# 369, p. 43).

Instructive, here, is the Tenth Circuit's holding in Bristol v. Bd of County Commissioners, 312 F.3d 1188, 1221 (10th Cir. 2002), which provides that a county can be held to set "official policies" for the county. Id. Cotting Lineas v. O'Louahlan, 831 F.2d 232, 233 (11th Cir. 1987). In the Lineas Court, that the Tenth Circuit relied upon, the Eleventh Circuit held that a county was liable for the acts of sheriff in terminating a deputy sheriff because although the sheriff

was elected by virtue of the state; he served the county, and had absolute authority over county deputies; and more salaries were paid by local taxation and according to the budget approved by county commissioners. Lucas, 831 F.2d at 235; See also Dodds v. Richardson, 614 F.3d 1185, 1207-08 (10th Cir. 2010)(municipality could be liable for officers' actions because sheriff responsible for policies enforced by subordinate at jail).

As a corollary to this rule, Mr. Corbeil has properly named Delta County as a defendant under the rationale of Monell v. Dept. of Soc. Serv. of City of New York, supra, in that's as alleged in the complaint:

> Rauner, Serra, Kailen, McKee, Werner, and Romero, as chief decision makers with final decision making authority for Delta County and its agencies – District Attorney's Office, Detention Center, Probation Department, each have statutorily based and local edict to protect citizens including Mr. Corbeil, from the violation of their civil rights by their officers and agencies practices and policies....who exercise great control over Delta County and its agencies in the prosecution and investigation of crimes and facilitation and control over pretrial detainees....

(ECF # 249-1, b. 22 ¶ 117). Thus Delta County is liable for the policies set off by its policy-makers that directly violated Mr. Corbeil's constitutional rights, as detailed here in. Alternatively, to the extent that the Court finds the BOCC is not the proper defendant, the Plaintiff resurrects his official capacity claims against Delta and the Prosecution defendants that were improperly dismissed based on the false premise of redundancy, which the Plaintiff objected to. (ECF # 245, no. 1-2); (EOF # 248, objection, no. 1-5.)

Respectfully, the Trial Court's dismissal of the Delta County Defendant was an error of law and, thus, this Court should reverse and remand for further proceedings.

    E.    The Trial Court's Denial Of Leave To Amend And Page Limitation On The Complaint Was An Abuse Of Discretion And Error Of Law.

The Court of Appeals should find that it was unfair to deny Mr. Corbeil and his Corbeil an additional amendment and more, unfairly oppressive to limit the Complaint to 25 pages, including any attachments, and reverse the extent ruling(s). (ECF #229, a.11)

Ordinarily, the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice. Gee v. Pacheco, 627 F.3d 1178, 1186 (10th Cir. 2010). Due to heightened concern when a Plaintiff proceed pro se, dismissal with prejudice is only appropriate "when it is obvious that the Plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." Oxendine v. Kaplan, 241 F.3d 1272, 1275 (10th Cir. 2001), "[A] careful judge will explain" any defects in the pleadings "so that a prisoner with meritorious claims can then submit an adequate complaint." Id. As such, "the Plaintiffs whose factual allegation are close to stating a claim but are missing some important element that may

not have occurred to him should be allowed to amend his complaint." Id. See Ashcroft v. Iqbal, 556 U.S. 668, 129 Sct 1937, 1954 (2009)(Remanding for determination whether to remand to District Court so Plaintiff could seek leave to amend.)

The dynamic of this case warrants the quintessential circumstances in which an additional amendment should be afforded to the Plaintiffs to correct any deficiencies in the factual pleadings; whereas, an amendment would cure any defect; thus, allowing meritorious claims to proceed on the merits. Building further on this premise, when this action was being prosecuted Colo. Dept. of Corr. abusively placed Mr. Corbaid in administrative segregation for 3 years and forced him to send out his legal books and typewriter due to his litigation efforts, which denied him adequate law library access. This is further exacerbated by the oppressive page limitation on the Complaint to include any attachments, that unfairly restricted the pleading of required details, which the Court unfairly used as a basis to dismiss. Therefore, it was unfair and oppressive to deny Mr. Corbaid and Mrs. Corbaid one additional attempt to articulate their claims, which would not be futile, and amounts to an abuse of discretion. Milligan v. Archuleta, 659 F.3d 1294, 1296 (10th Cir. 2011)(Court erred in denying Plaintiff leave to amend.)

Consequently, this Court should reverse the underlying judgment, and remand with leave to amend the pleadings unrestricted by an oppressive page limit.

II.    The Trial Court Erred As A Matter Of Law In Granting Summary Judgment Where The Evidence Before The Court Controverted Defendants' Motion For Summary Judgment Establishing A Genuine Issue Of Material Fact.

The Trial Court erred as a matter of law when it ignored evidence before the Court that established a triable Fourth and Fourteenth Amendment claim against the Defendants; hence, this Court should rescind the extant judgment, and remand for trial on the merits.

A.    Standard of Review and Preservation of Issues

Summary Judgment is appropriate if the record shows there is no genuine issue as to any material fact, after viewing the evidence in light most favorable to Mr. Corbaid. Celotex Corp. v. Cattrell, 477 U.S. 317, 322 (1986). "Where different ultimate inferences can be drawn from the evidence presented by the parties, the case is not one for summary judgment." Brown v. Parker-Hannifin Corp, 746 F.2d 1407, 1411 (10th Cir. 1984).

B.    Courts decision to grant summary judgment based on the absence of evidence is subject to de novo review. See Palladium Music Inc. v. EatSleep Music, 398 F.3d 1193, 1196 (10th Cir. 2005). The Court applies the same standard as the Trial Court.

1.    Its Order granting Summary Judgment the Trial Court found that the evidence

before the Court was insufficient to establish a genuine issue of material fact. (ECF# 783, p. 1-57). The Court adopted that recommendation, save the Plaintiffs excessive force claims were permitted to proceed to trial. (ECF# 804, pp. 6-8). Mr. Carbajal filed a motion for extension of time, but was denied leave to file his objection untimely. (ECF# 802, p. 1-3). However, the Plaintiff filed a timely motion to alter or amend Judgment under Rule 59 and 60 based on the defendants fraud. (ECF# 811, pp. 1-29), with an Evidence Index (ECF# 826, pp. 1-2, Exhibits 1-14). As such, the underlying issues are preserved for review, and to the extent the Court finds that they were not, this Court may review for clear error.

B.   A reasonable jury could have returned a verdict against the Defendants for malicious prosecution under the Fourth and Fourteenth Amendment

A de novo review reveals a genuine issue of material fact concerning whether the Defendants maliciously prosecuted Mr. Carbajal in violation of his Fourth and Fourteenth Amendment rights based on the evidence before the Court. As such, the Court's grant of Summary Judgment was an act of law and clearly erroneous.

Plaintiffs claim of Malicious Prosecution under the Fourth and Fourteenth Amendment requires Plaintiff to prove at trial, by the preponderance of the evidence, that (1) Defendants caused the Plaintiff continued confinement and prosecution; (2) the original action terminated in favor of the Plaintiff; (3) there was no probable cause to support the original arrest, continued confinement, or prosecution; (4) Defendants acted with malice; and (5) Plaintiff sustained damages. Wilkins v. DeReyes, 528 F.3d 790, 799 (10th Cir. 2008).

In this case, the Plaintiff has made a proper showing of malicious prosecution against the State, Probation Delta, and Denver Defendants under the Fourth and Fourteenth Amendment. Indeed, the Defendants Motions for Summary Judgment were properly controverted by Mr. Carbajal's verified complaint, affidavits, and Evidence Index, as well as discovery responses and Statement of Material Facts and Disputed Facts; which under the current state of law are not pleadings, and thus not subject to being stricken under Fed. R. Civ. P. 12(f). EEOC v. Admiral Maintenance Service, L.P., 174 F.R.D. 643, 646 (N.D. Ill., 1997); Meredith v. Ill Steel, Inc., 814 F.Supp. 657, 660 (N.D. Ill. 1992). Aff'd in part and rev'd in part on other grounds, 11 F.3d 1354 (7th Cir. 1993) (Denying the Defendants motion to strike a plaintiffs statement of undisputed facts pursuant to Rule 12(f)). Accordingly, the Courts decision and recommendation to grant summary judgment, after denying Mr. Carbajal a fair opportunity to respond, and then striking his Response to the State (Probation) Defendants and Evidence Index, was

an error of law and clearly erroneous.

Indeed, Rule 12(f) permits a party to move to strike matters at the pleading stage, not the summary judgment stage. EEOC v. Admiral Maintenance Service, L.P. 174 FRD 643, 646 (N.D. Ill. 1997). Thus, the Court's refusal to consider the Plaintiffs Declaration of Truth (#119-2), Response to Discovery (ECF#541), Plaintiffs Response to State Defendants Motion For Summary Judgment (ECF#755), and Evidence Index (ECF#761), was clear error, because these documents filed in the Court are not pleadings, and properly controvert summary judgment. Id.; see also Knight v. United States, 845 F.Supp. 1372, 1374 (D. Ariz. 1993), aff'd, 77 F.3d 489 (9th Cir. 1994); Jones v. City of Topeka, 764 F.Supp. 1423, 1428 (D.Kan. 1991); Ross v. Frazen, 777 F.2d 1216, 1222 (7th Cir. 1985).

In addition, the Magistrate's Recommendation amounts to a credibility determination contrary to Scott v. Coughlin, 334 F.3d 282, 289 (2nd Cir. 2003), in that; the Court has ignored the evidence and verified pleadings supporting a malicious prosecution claim, and accepted the Defendants false narrative that probable cause existed to arrest and prosecute Mr.Carbajal, which the District Court adopted in err — ignoring the existence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317,322 (1986). And to exacerbate matters, the Court committed plain err when it made a credibility determination on the issue of probable cause as to the Denver, Delta, and Probation Defendants; in that, the record in this case clearly demonstrates material factual disputes regarding the existence of probable cause to arrest and prosecute Mr.Carbajal, which is a question to be resolved by the jury under the rubric of De Loach v. Bevers, 922 F.2d 618, 623 (10th Cir. 1990). The Court's improper decision to take this question away from the fact finder is an err of law and clear err, that requires reversal. Reichle v. Howards, 132 S.Ct. 2008 (2012)("We have long recognized that it is a jury question in a civil rights suit whether an officer had probable cause to arrest").

Accordingly, the Court's grant of summary judgment circumvents controlling legal standards, and overlooks evidence before the Court that evinces a genuine issue of material fact concerning whether the Defendants maliciously prosecuted Mr.Carbajal. And, more importantly, because Plaintiff has authorally proved the deprivation of a constitutional right, his claim survives summary judgment. Wilkens v. De Reyes, 528 F.3d 790, 799 (10th cir 2008). Therefore, this Court should reverse.

1. Mr. Carbajal was maliciously Prosecuted by the Delta and
Probation Defendants in Case no 99CR96

The Trial Court erred in its holding that no evidence existed that the
State Defendants Warner, Romero and Quintana had any connection with the events
of which Plaintiff complains, which occurred in 2005 and April 2006, and that it thus
appears to be no evidence of personal participation; and erred in its holding that
there is no evidence identifying or explaining any of the alleged destruction of evidence
or manufacturing of probable cause. (ECF# 783, pp. 14-22). As such, this Court should reverse.

As an initial matter, the Plaintiffs Verified Response to the States Motion
For Summary Judgment, pages 1-22, and supporting Evidence Index (ECF# 755,
pp 1-22)(ECF# 761, pp. 1-139; ECF# 761-1, pp 1-126) ECF#761-2 pp 1-39) specifically negate
the defendants statements that they had no involvement in the malicious prosecution
of Mr Carbajal and that probable cause existed to arrest and prosecute Mr Carbajal.
In fact, the Plaintiffs Verified Response To the States Statement of Material Fact,
(ECF #761-2, Exhibit 15, pp. 30-39) details The Defendants Warner, Romero, and
Quintana's personal involvement in the destruction of original contracts and fabrication
of an illegal deferred; but more importantly, this evidence proves that Warner
Romero, and Quintana submitted false affidavits for Mr. Carbajal's arrest and
prosecution for revocation of the illegal deferred, with knowledge that no jurisdiction
existed to revoke, as detailed in pages 6-14 of Plaintiffs Response ECF#755 J. And
despite proving that the underlying conviction was terminated in his favor(ECF#
755, pp14-15); that Warner, Romero, and Quintanas actions were in absence of
jurisdiction and probable cause, (ECF# 755, pp 15-16); Defendants actions were with
malice, (ECF# 755, pp. 17-18); and that Mr. Carbajal was injured as a direct result of
Warner, Romero, and Quintana's malicious prosecution of him. (ECF#755, pp 1-3;
the Court intentional ignored this evidence in the record in err, Rather, the Court
has opted to make a credibility determination against the great weight of
evidence showing that the State Defendants intentionally submitted distorted
and false affidavits to wrongfully arrest and prosecute Mr Carbajal for a deferred
that did not legally exist, contrary to Celotex Corp v. Catrett, 477 U.S. 317,322 (1986)
Being such, the extent judgment is unfair and contrary to controlling legal
standards, and should be reversed.

In addition, the Court and Defendants artful distract and redirect in an

effort to conceal that the Complaints to revoke and Affidavits. (ECF# 761, pp 19-32) were found upon the Court. For instance, the key narrative used to fabricate probable cause is:

> "The Defendant [Dean Carbajal] was placed on probation on 1-14-06 for two years by virtue of his conviction of ... Assault in the Second Degree. F-4."

Id. This entire statement is false and distorted. First no probation was ever entered on January 14, 2006 ... Secondly, this obviously false statement excludes the date of plea to prevent a Judge from seeing that no jurisdiction or probable cause exists. (ECF# 755, pp. 9-11).

Accordingly, a genuine issue of material fact exists concerning whether the Defendants Maliciously prosecuted McCarbajal. Therefore, this Court should reverse and remand for a trial on the merits.

C. The Trial Court's Denial of Leave To Reopen Discovery, Denial of Stay of Proceedings, and Denial of Extension of Time Was Unfair

The Trial Court erred in denying Mr. Carbajal an extension of time to conduct further discovery and stay of proceedings, and more this unfair denial has grossly corrupted the fairness of proceedings by denying Mr. Carbajal a fair opportunity to prove his claims against the Denver, Delta, and other Defendants, as detailed in his motion to reopen discovery and stay of proceedings. (ECF# 731, pp. 1-6), detailing the recent exoneration of a non-party at fault as an abusive defense tactic to shift liability. It was based on fraud that Mr. Carbajal filed a Motion For Sanctions and an Emergency hearing (ECF# 733, pp 1-8), which the Court ignored without consideration for the Defendants concealment of Shbuck's involvement in the illegal invasion of Mr. Carbajal's home and fabrication of charges. And in an abundance of caution, the Plaintiff Mr. Carbajal filed a motion for a final extension of time to properly secure evidence concerning Shbuck and his involvement in the drafting of the false interference and disturbance charge. (ECF# 740, pp 1-3). Still, despite knowing that the Defendants had concealed evidence to force Summary Judgment, the Court unfairly denied any stay, discovery, and extension. (ECF# 683, pp 1-3). See Visa Int. Serv. Assn. v. Bank Card Holders America, 784 F.2d 1472,

CONCLUSION

The dynamics of this case present the unique circumstances in which the Court of Appeals should reverse the extant judgment based on the absence of fundamental fairness of due process and manifest injustice, that amounts to a denial of redress of grievance and access to the court. Both the individual and cummulative effect of the error here call into question the validity of the underlying judgments and suggest that the Court never intended to allow the Plaintiffs to present their civil rights claims by systematically denying them review through the distortion of facts and misapplication of law. Certainly, the Court and public can not see justice served here; but, in fact, the denial of fair administration of justice has seriously damaged the reputation of judicial proceedings. For this reason, it is incumbent upon this Court to correct this miscarriage of justice, and reverse the extant judgment.

Respectfully submitted this 20ᵗʰ day of December 2019.

Dean Carbajal
PO Box 2000
Sterling City, Co. 80751

Victoria Carbajal
Victoria Carbajal
609 Barbara Ct. Apt C.
Montrose, Co. 8140

Certificate Of Service

The undersigned hereby certifies that the foregoing Opening Brief was mailed to the Clerk of Court, and that a true and correct copy was mailed to all interested parties.

David Cooperstein                david.cooperstein@denvergov.org
Andrew Ringel                    ringela@hallevans.com
Jeffrey Driscoll                 jdriscoll@wth-law.com
Patrick Sayas                    pat.sayas@coag.gov

Dean Carbajal

United States Court of Appeals
For the Tenth Circuit
1823 Stout St.
Denver, Co 80257

Scanned by
U.S. Marshal

ZIP 80257
02   1W
000 1365920 DEC 2

OCF
FACILITY
12/23/19
DATE REC'D
Benson
DOC EMPLOYEE LAST NAME
24294
ID#
AB
INT
110908
DOC#
Carbajal
OFFENDER LAST NAME
INT